MULBERRY-FAIRPLAINS WATER ASSOCIATION, INC. v. TOWN OF NORTH WILKESBORO

No. 9123SC38

(Filed 4 February 1992)

1. **Municipal Corporations § 5.2 (NCI3d) — contract to sell water — proprietary function — binding**

The trial court correctly granted partial summary judgment for plaintiff in an action in which plaintiff water company alleged that defendant had breached a price provision in a contract under which defendant sold water to plaintiff. Although defendant contended that the setting of water rates is a governmental function and that this contract is unenforceable because

---

it deprives subsequent town boards of the necessary discretion to perform that function for the remainder of the contract's forty year term, a municipal corporation is statutorily authorized to enter into contracts for the supply of water not exceeding forty years and the setting of rates and charges for water services furnished by a municipality to its customers is a proprietary function, subject only to limitations upon such action by statute or contractual obligation assumed in such actions. N.C.G.S. § 160A-322.

**Am Jur 2d, Waterworks and Water Companies § 4.**

2. **Municipal Corporations § 22 (NCI3d)— water contract—rate change—breach of contract**

The trial court did not err by concluding that the effect of a new water rate was a breach of contract where defendant municipality had contracted to supply water to plaintiff; the contract requires that the rate defendant charges to plaintiff has to be increased or decreased in the same proportionate amount as for customers inside the city limits; the new rate increased the cost of water for plaintiff while it decreased the cost for the majority of residents located within city limits.

**Am Jur 2d, Waterworks and Water Companies §§ 3, 13.**

3. **Municipal Corporations § 22 (NCI3d)— water contract— modification**

The trial court erred by deciding as a matter of law that a contract under which defendant sold water to plaintiff had not been modified and that defendant was entitled to summary judgment where the parties, for at least 15 years before this action, had established a continuous course of performance whereby defendant sold and plaintiff purchased water in excess of the contract maximum at the contract price; defendant supplied plaintiff with the amount of water plaintiff needed to supply its customers during that time without objection; defendant's first and only attempt to enforce the contract provision in question was after plaintiff filed this action; and defendant's general assertion that it furnished excess water solely on a month by month basis with no assurance of further supply and that this was not a modification of the contract was insufficient to meet the burden required of the party moving for summary judgment.

**Am Jur 2d, Waterworks and Water Companies § 14.**

MULBERRY-FAIRPLAINS WATER ASSN. v. TOWN OF NORTH WILKESBORO

[105 N.C. App. 258 (1992)]

4. **Estoppel § 15 (NCI4th) — water contract — modification — estoppel to deny**

Defendant was estopped from denying a modification to a contract under which it furnished water to plaintiff where plaintiff relied on defendant's conduct for many years; plaintiff was and is the only supplier of water to its customers; numerous additional customers, commercial and individual, were added to plaintiff's service area during those years; defendant was aware of the addition of customers and the increased demand for water by plaintiff which resulted therefrom; defendant acquiesced in those additions and furnished the amount of water necessary to supply them; and defendant benefited from its conduct by accepting payment at the contract rate for the water furnished in excess of the contract maximum.

**Am Jur 2d, Estoppel and Waiver §§ 35, 76, 77, 128.**

APPEALS by plaintiff and defendant from order entered 28 August 1990 in WILKES County Superior Court by *Judge W. Douglas Albright* granting plaintiff's motion for partial summary judgment and granting, in part, defendant's motion for summary judgment. Heard in the Court of Appeals 10 October 1991.

Plaintiff is a North Carolina non-profit corporation engaged in the sale and distribution of potable water in Wilkes County to 2100 members and serves a population of approximately 12,000 individuals. Since 1964, defendant has continuously sold water to plaintiff pursuant to written water contracts, the most recent contract being dated August 1974 and amended in January 1975.

The August 1974 written agreement provides that defendant will furnish plaintiff's water needs up to a maximum of 15,000,000 gallons per month. That agreement contains a price provision pertinent to this appeal which applies to the method by which defendant can increase or decrease the rate charged for the water it supplies to plaintiff under the contract in excess of the initial 1,500,000 gallons per month. Pursuant to this provision, if defendant increases or decreases the water rate charged to plaintiff, then the rate charged defendant's customers inside the city limits must be increased or decreased in the same proportionate amount. In December 1989, defendant's Town Board of Commissioners passed a resolution adopting a new "flat rate" of $.77 per thousand gallons for water sold to plaintiff. The rate was to become effective 1 January 1990.

Prior to the resolution, plaintiff had been paying a rate of $.347 per thousand for all gallons over 1,500,000. Thus, the new rate effectively doubled the plaintiff's cost of purchased water, while decreasing the rate charged defendant's customers inside the city limits.

In response to the resolution, plaintiff notified defendant that it considered the new rate to be in breach of their contract and requested that defendant negotiate a lower rate in accordance with the contract. Defendant refused to reconsider or modify the resolution.

Defendant sent plaintiff a January water bill in the amount of $22,952.93, which was calculated according to the new rate. Plaintiff submitted payment of $10,111.19, which was based on the rate effective prior to the resolution. Defendant returned the payment to plaintiff and simultaneously notified plaintiff that its account was delinquent. Subsequently, by written notice, defendant informed plaintiff that their water supply would be cut off if the January bill plus interest in the amount of $2,295.29 was not paid in full within five days of receipt of that notice.

Plaintiff filed this cause of action, alleging that the new rate constituted a breach of the contract. Plaintiff also alleged that the contract had been modified via the parties' course of conduct over the preceding fifteen years.

The alleged modification concerned a provision in the contract which provided that defendant was only obligated to supply plaintiff with a maximum of 15,000,000 gallons of water per month. Plaintiff alleged that defendant had continuously supplied water in excess of 15,000,000 gallons each month at the contract price for the preceding fifteen years and that plaintiff had detrimentally relied on this course of performance. Plaintiff alleged that the contract provision had been modified by this conduct and therefore defendant could not now attempt to restrict the quantity by relying on that provision, nor charge a price inconsistent with the contract rate.

Defendant answered alleging that the water rates to users within the town which were "similarly situated to plaintiff" had been increased in the same proportionate amount as had plaintiff's rates. Thus, the contract had not been breached. In further defense to plaintiff's claims, defendant alleged the contract in question pur-

ported to extend for forty years and was void because it placed an impermissible restriction on the Town Board's discretion. Finally, defendant denied that the quantity term of the contract had been modified and counterclaimed against plaintiff for the sums due for water furnished by defendant in January and February of 1990 and for any water furnished subsequent thereto.

Plaintiff obtained a temporary restraining order to prevent defendant from "cutting off, terminating, or decreasing" the quantity of water being supplied to plaintiff. Subsequently, a consent order was entered which, in effect, continued the provisions of the temporary restraining order while this action was pending. Among other things, the consent order dictated the method by which plaintiff would pay for the water received from defendant and obligated defendant to provide a maximum of 33,500,000 gallons of water per month.

Plaintiff filed a motion for partial summary judgment regarding the breach of contract issue and contended that a genuine issue of material fact existed as to whether the 15,000,000 gallon per month term had been modified. Defendant also filed a motion for summary judgment.

In the final judgment, the trial court granted summary judgment in favor of plaintiff as to the breach of contract claim. The court held as a matter of law that the new rate violated the price provision in the contract. Thus, plaintiff was entitled to the water supplied under the contract since January 1990 at the pre-resolution October 1989 rate. Defendant appealed from this part of the judgment. Further, the trial court granted summary judgment in favor of defendant on the issue of modification of the quantity term and the counterclaim. The court ordered that defendant was obligated to supply 15,000,000 gallons per month at the contract rate and that any water furnished in excess of that amount was not governed by the contract. The price of such excess water supplied to plaintiff would be defendant's flat rate in effect at the time the water was supplied. Plaintiff appealed from this part of the judgment. The court also entered judgment against plaintiff in the amount of $51,428.94 plus additional compensation, consistent with the judgment, for water furnished to plaintiff in excess of 15,000,000 gallons from 20 August 1990 through the date of judgment. We will address each appeal independently.

MULBERRY-FAIRPLAINS WATER ASSN. v. TOWN OF NORTH WILKESBORO

[105 N.C. App. 258 (1992)]

*Brewer & Brewer, by Gregory J. Brewer, for plaintiff.*

*E. James Moore for defendant.*

WELLS, Judge.

I.

[1] The sole issue presented by defendant's appeal is whether the trial court erred in granting plaintiff's motion for partial summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show [1] that there is no genuine issue as to any material fact and [2] that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). Appellate review of summary judgment cases focuses on "whether the trial court's conclusions as to these questions of law were correct ones." *Ellis v. Williams*, 319 N.C. 413, 355 S.E.2d 479 (1987).

A party moving for summary judgment must show that there is no triable issue of fact before the court. The movant may meet this burden by (1) proving an essential element of the opposing party's claim is nonexistent, or (2) showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E.2d 419 (1979) (*citing Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E.2d 795 (1974)). Applying the above law to the facts of this case, in order to meet this burden, plaintiff would have to (1) show that a forecast of defendant's evidence indicates it will be unable to prove that the contract is unenforceable or (2) prove that an essential element of defendant's defense is nonexistent.

Defendant attempts to argue that the setting of water rates is a governmental function instead of a proprietary one. Defendant contends the contract in question is invalid and unenforceable because, for the remainder of the forty year term, it deprives subsequent town boards of the discretion necessary to perform the governmental function of setting water rates and thereby violates public policy. Therefore, defendant argues that the contract in question is not binding on the town. We find defendant's argument to be without merit.

In North Carolina, the law on this issue has been settled. First, we note that a municipal corporation is statutorily authorized to enter into contracts for the supply of water *not exceeding* forty years. N.C. Gen. Stat. § 160A-322 (1987). (Emphasis added). Further a municipality is authorized to establish and revise rates for water and sewer services. N.C. Gen. Stat. § 160A-314(a) (1987 & Supp. 1991). The setting of rates and charges for water services furnished by a municipality to its customers is a proprietary function, subject only to limitations imposed upon such action by statute or *contractual obligation assumed* in such actions. *Town of Spring Hope v. Bissette,* 305 N.C. 248, 287 S.E.2d 851 (1982), *aff'g,* 53 N.C. App. 210, 280 S.E.2d 490 (1981). (Emphasis added). *See also Aviation, Inc. v. Airport Authority,* 288 N.C. 98, 215 S.E.2d 552 (1975); *Pulliam v. City of Greensboro,* 103 N.C. App. 748, 407 S.E.2d 567, *disc. review denied,* 330 N.C. 197, 412 S.E.2d 59 (1991). Thus, defendant was performing a proprietary function when it entered into the contract with plaintiff and agreed to the price provision contained therein. Defendant is bound by that contractual provision for the duration of the contract. For the foregoing reasons, we affirm the trial court's decision regarding this issue.

[2] Defendant's next argument, in essence, appears to be that the trial court erred in concluding that the effect of the new rate was in breach of the contract. Again, we find no merit to this argument. After a thorough review of the lengthy record in this case, we find the trial court properly determined that there was no genuine issue of material fact with regard to whether the new rate constituted a breach of the contract and that plaintiff was entitled to judgment as a matter of law on this issue. The contract provision in question is clear. When the language of a contract is plain and unambiguous, construction of the language is a matter of law for the court. *Mountain Fed. Land Bank v. First Union Nat. Bank,* 98 N.C. App. 195, 390 S.E.2d 679, *disc. review denied,* 327 N.C. 141, 394 S.E.2d 178 (1990). The contract requires that the rate defendant charges plaintiff has to be increased or decreased in the same proportionate amount as it is for those customers who live inside the city limits. Based on the information supplied to the court, the court properly determined that the $.77 rate effected a disproportionate rate change. The new rate increased the cost of water for plaintiff while it decreased the cost for the majority of residents located within the city limits. This was an

MULBERRY-FAIRPLAINS WATER ASSN. v. TOWN OF NORTH WILKESBORO

[105 N.C. App. 258 (1992)]

obvious breach of the price provision in the contract. Thus, we affirm the decision of the trial court.

In conclusion, based on the foregoing reasons, we hold the trial court properly granted plaintiff's motion for partial summary judgment.

## II.

[3] The sole issue presented by plaintiff's appeal is whether the trial court erred in granting, in part, defendant's motion for summary judgment.

Plaintiff's forecast of evidence with regard to the issue of modification tended to show the following facts and circumstances. In its complaint, verified by the President of the Association, plaintiff alleged that since the execution of the last water contract in 1974, defendant had continuously supplied water to plaintiff in amounts in excess of the original 15,000,000 gallons per month limitation. Plaintiff also alleged that it had been induced to rely on such supply because since the execution of the contract, population and businesses in its supply area had expanded considerably "largely due to said continuous provision of water." In opposition to defendant's motion for summary judgment, plaintiff submitted a forecast of evidence which showed that water in excess of 15,000,000 gallons per month had been furnished plaintiff at the contract rate on a regular basis since 1975.

Defendant's forecast of evidence with regard to the issue of modification was as follows: In its answer, verified by the town manager, defendant admitted to supplying water in excess of the 15,000,000 gallon contractual maximum. Defendant stated that the furnishing of such excess water was solely on a month-by-month basis with no assurance that it would continue to do so. Defendant submitted other documents to show how the rate increase in question had been calculated. These documents reflected that the town based the increase, in part, on plaintiff's average monthly consumption of 28,011,410 gallons. Additional documents submitted by defendant showed that annual consumption for plaintiff was 244,081,125 gallons in 1986; 320,956,219 gallons in 1987; and 330,295,196 galllons in 1988.

We first point out that the sale of water, under the facts and circumstances of this case, constitutes a sale of goods under Article 2 of the Uniform Commercial Code (hereinafter the "Code").

*See Zepp v. Mayor & Council of Athens*, 180 Ga. App. 72, 348 S.E.2d 673 (1986). The Code defines "goods" as "all things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." N.C. Gen. Stat. § 25-2-105 (1986). The definition of goods is based on the concept of movability. Official Comment 1, U.C.C. § 25-2-105. "Whatever can be measured by a flow meter has 'movability' as that term is used in connection with the definition of goods." 1 Anderson, *Uniform Commercial Code*, § 2-105:19 (3d ed. 1981). The sale of water is movable in this context. This is evidenced by the fact that defendant charges plaintiff for the water it supplies by the number of gallons plaintiff consumes per month. Water is also identifiable as a movable at the time of identification to the contract. *Zepp, supra*. Thus, we conclude that the contract involved in this case is governed by the provisions of the Code.

Plaintiff contended that the quantity term of the 1974 contract had been modified as evidenced by the parties' course of performance over the fifteen years preceding this action. Additionally, plaintiff argued that since it had detrimentally relied on defendant's conduct, defendant should be estopped to deny that the original agreement had been changed.

We note at the outset that unlike common law, a modification under Article 2 needs no new consideration to be binding. N.C. Gen. Stat. § 25-2-209(1). However, in order for the modification to be enforceable, the statute of frauds found in N.C. Gen. Stat. § 25-2-201 must be complied with if the contract, as modified, falls within its provisions. N.C. Gen. Stat. § 25-2-209(3). The alleged modification in this case would ordinarily fall within the provision of N.C. Gen. Stat. § 25-2-201(1) since it involves the sale of goods for a price of $500.00 or more. Thus, the defense of the statute of frauds would apply in this case. However, this defense must be affirmatively pled. N.C. Gen. Stat. § 1A-1, Rule 8(c) (1990). Failure to plead an affirmative defense constitutes a waiver of that defense. *Smith v. Hudson*, 48 N.C. App. 347, 269 S.E.2d 172 (1980). Since the defendant in the case at bar did not plead the statute of frauds in defense to plaintiff's modification claim, he has waived the right to assert it. *Bone Int'l, Inc. v. Johnson*, 74 N.C. App. 703, 329 S.E.2d 714 (1985).

**MULBERRY-FAIRPLAINS WATER ASSN. v. TOWN OF NORTH WILKESBORO**

[105 N.C. App. 258 (1992)]

Modification of a sales contract may be established by a course of conduct. Under the Code, course of performance[1] is relevant to show a modification of any term inconsistent with the parties' course of performance. N.C. Gen. Stat. § 25-2-208(3). This provision is in accord with pre-Code law wherein it is established that:

> The provisions of a written contract may be modified or waived by a subsequent parol agreement, or by conduct which naturally and justly leads the other party to believe the provisions of the contract are modified or waived. . . .

*Son-Shine Grading v. ADC Construction Co.*, 68 N.C. App. 417, 315 S.E.2d 346, *disc. review denied*, 312 N.C. 85, 321 S.E.2d 900 (1984). (Citation omitted).

Based on the record before us, we find there was a sufficient forecast of evidence before the court to establish beyond dispute that the parties, for at least the *fifteen years* immediately preceding this action, had established a continuous course of performance whereby defendant sold and plaintiff purchased water in excess of the contract maximum at the contract price. Furthermore, it appears that defendant supplied plaintiff with the amount of water plaintiff needed to supply its customers during that time *without objection.* The record indicates that defendant's first and only attempt to enforce the contract provision in question was *after* plaintiff filed this action. Defendant, as the party moving for summary judgment, failed to meet its burden of proving an essential element of plaintiff's claim was nonexistent or of showing through discovery that plaintiff could not produce evidence to support an essential element of its modification claim. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E.2d 419 (1979). Defendant's general assertion that "the furnishing of such excess water on the part of defendant in the past was solely on a month by month basis with no assurance of further supply of such excess water and does not work as a modification of the contract between the parties" was insufficient to meet this burden. Accordingly, we hold that it was error for the trial court to decide, as a matter of law, that the contract

---

1. Although course of performance is not specifically defined in § 25-2-208, Official Comment 2 to § 25-1-205 states "[c]ourse of dealing under subsection (1) is restricted, literally to a sequence of conduct between the parties *previous* to the agreement. However, the provisions of the Act on course of performance make it clear that a sequence of conduct *after or under* the agreement may have equivalent meaning. (Section 2-208.)" (Emphasis added).

had not been modified and that defendant was entitled to summary judgment on this issue.

[4] Unless displaced by the particular provisions of the Code, the principles of law and equity, including estoppel, shall supplement its provisions. N.C. Gen. Stat. § 25-1-103 (1986). The doctrine of equitable estoppel is recognized in North Carolina. *Smith v. Smith*, 265 N.C. 18, 143 S.E.2d 300 (1965). In *Godley v. County of Pitt*, 306 N.C. 357, 293 S.E.2d 167 (1982), the Court stated:

> In its broadest and simplest sense, the doctrine of estoppel is a means of preventing a party from asserting a legal claim or defense which is contrary to or inconsistent with his prior actions or conduct. The underlying theme of estoppel is that it is unfair and unjust to permit one to pursue an advantage or right which has not been promoted or enforced prior to the institution of some lawsuit; in particular, the rule is grounded on the premise that it offends every principle of equity or morality to permit a party to enjoy benefits of a transaction and at the same time deny its terms or qualifications. (Citations omitted.)

Due to the facts and circumstances of this case, we are of the opinion that the application of the doctrine of equitable estoppel is particularly appropriate. The forecast of evidence was sufficient to show plaintiff relied on defendant's conduct for many years. Plaintiff was and is the only supplier of water to its customers. The record indicates that numerous additional customers, both individual and commercial, were added to plaintiff's service area during these fifteen years. Furthermore, the record shows that defendant was aware of the addition of customers and the increased demand for water by plaintiff which resulted therefrom. Defendant acquiesced in these additions and furnished the amount of water necessary to supply them. Defendant has also benefitted from its conduct by accepting payment, at the contract rate, for the water furnished in excess of the contract maximum. Under these circumstances, we find that it would grossly offend the principles of equity to allow defendant to now deny that such modification took place in order to enforce the quantity provision in a manner inconsistent with its conduct for the preceding fifteen years.

In conclusion, we hold that the water purchase contract at issue has been modified. Pursuant to this modification, defendant is contractually bound to furnish water to plaintiff in excess of

the 15,000,000 gallon per month limitation. Defendant is obligated to supply water to plaintiff in an amount up to and including the maximum amount furnished to plaintiff, in any given month, prior to the institution of this action. Defendant is to furnish said water at the same contract rate charged for the gallons supplied in excess of the initial 1,500,000 gallons. Defendant is entitled to charge whatever rate it may set for any water furnished plaintiff in excess of the amount determined to be the modification amount. This obligation will remain in effect until the termination, expiration and/or modification of the current contract between the parties. On remand, we order that judgment be amended in favor of plaintiff in a manner not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Judges PARKER and WYNN concur.