**INTERSTATE NARROW FABRICS, INC., Plaintiff,**

v.

**CENTURY USA, INC., d/b/a Century Narrow Fabrics; Murray Fisher; John I. Wild; and George H. Smith, Defendants.**

**No. 1:02 CV 00146.**

United States District Court, M.D. North Carolina.

Oct. 2, 2003.

Jack M. Strauch, John F. Morrow, Jr., Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, for plaintiff.

Mack Sperling, Brooks, Pierce, McLendon, Humphrey & Leonard, Jack B. Bayliss, Jr., Carruthers & Roth, P.A., Greensboro, NC, David M. Woolridge, Robert R. Baugh, Katie Loggins Vreeland, Sirote & Permutt, P.C., Birmingham, AL, for defendants.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

The following motions are currently pending before this Court: Defendants' Motion to Amend their Answer [Doc. # 73], Plaintiff's Motion for Partial Summary Judgment [Doc. # 28], Defendants' Motion to Strike Portions of Plaintiff's Brief in Support of Motion for Partial Summary Judgment [Doc. # 47], and Defendants' Motion for Summary Judgment [Doc. # 34].[1]

For the reasons set forth below, Defendant's Motion to Amend is DENIED; Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART; Defendant's Motion to Strike is DENIED; and Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

### I.

The undisputed facts are as follows: Plaintiff Interstate Narrow Fabrics, Inc. ("Interstate") is a North Carolina corporation with a principal place of business in Alamance County, North Carolina. Interstate manufactures and sells certain knitted and woven elastic and non-elastic narrow fabric products, including pantyhose elastic, waistbands for underwear, sporting goods rigid elastic, and fabric tapes.

Defendant Century USA, Inc. ("Century") is a Delaware corporation with a principal place of business in Birmingham, Alabama. Century sells, but does not manufacture, a wide range of narrow fabric products, including those products manufactured by Interstate along with products manufactured by other companies. Defendant Murray Fisher is the President and a shareholder of Century. Defendant John Wild is the Secretary and a shareholder of Century. Defendant George "Nick" Smith is a former shareholder, director, and salesman, and a current sales consultant for Century. The individual defendants are all residents of Birmingham, Alabama.

Interstate was incorporated by Tony and Marie Vailati in 1985 and operated as a family business for five years. In 1990 the Vailatis sold fifty percent (50%) of the company's stock to the Birmingham Group, a company with experience in selling narrow fabrics. As part of the transaction, the parties entered into a consulting agreement ("the 1990 Agreement") pursuant to which the Birmingham Group agreed to provide sales services in return for a monthly fee and commissions.

The parties operated under the 1990 Agreement for eight years (four successive two-year terms). However, a mutual decision to end the partnership was formalized in an agreement signed by both parties[2] on March 31, 1998 ("the Agreement"). [Doc. # 29, Ex. J]. Pursuant to the Agreement, the Vailatis purchased the Birmingham Group's stock in Interstate and released the Birmingham Group from any Interstate debts and liabilities. In addition, the Agreement included a sales contract stating that Interstate would be "the Exclusive Supplier of Product" sold by the Birmingham Group's company, Century,[3] to certain customers for a two-year period.[4] [Doc. # 29, Ex. J]. Relevant language of the Agreement is as follows:

---

1. Plaintiff's Motion for Appropriate Relief [Doc. # 68] is also currently pending before this Court. Specifically, Plaintiff requests that the Court strike Defendants' Answer, or in the alternative, strike Defendants' Motion for Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment. The grounds for this motion rest upon allegations that Defendants have made numerous and intentional misrepresentations to the Court. This matter is set for hearing and will not be addressed in the present opinion.

2. The following parties signed the 1998 Agreement: (1) Interstate (signed by President, Tony Vailati), (2) Century (signed by Vice President, John Wild), (3) Tony Vailiti, (4) Marie Vailati, (5) Murray Fisher, (6) George "Nick" Smith, (7) John Wild, (8) Gary Fisher, (9) Scott Fisher, and (10) Irving Wild.

3. The Birmingham Group formed Century USA, Inc. in 1993.

4. The 1998 Agreement was effective from March 31, 1998 to March 30, 2000.

During the term of this Agreement, Interstate shall be Century's exclusive manufacturer/supplier of Product for (i) sales by Century to Existing Century Customers and to customers having their primary purchasing function within the Century Territory (excluding the Interstate Customers) and (ii) for purchases of Product by Century for its own account for resale to Existing Century Customers or customers having their primary purchasing function within the Century Territory; provided however, Century may obtain Product for such sales from other manufacturers/suppliers if Interstate refuses or is unable to provide the Product within the time requirements of the customer or if Interstate's prices are not competitive (the "First Refusal") .... To the extent not inconsistent with the customer's time requirements, Century shall promptly provide such competitive written quotes and the names of the Qualified Suppliers to Interstate at least ten (10) business days prior to Century's placement of any purchase order for such specific Product pursuant to this First Refusal right of Interstate.

[Doc. # 29, Ex. J, Tab 1 ¶ 3].

The Agreement included several express definitions. "Product" was defined as "knitted or woven elastic or non-elastic products;" the "Century Territory" as "Alabama, Arkansas, Georgia, Mississippi, Louisiana, Texas, Florida, Tennessee, and Kentucky;" and "Existing Century Customers" as "current customers for Product manufactured by Interstate identified on Exhibit A attached hereto." [Doc. # 29, Ex. J, Tab 1 ¶¶ B, 1(a)-(b) ]. The Agreement also provided that "all notices, requests, claims, and other communications hereunder shall be in writing ...." [Doc. # 29, Ex. J, Tab 1 ¶ 8.4].

5. Whether these goods were "Products," as defined by the Agreement, is disputed by the parties.

6. Interstate has provided copies of Northeast invoices that detail the sales to Century of goods that were for Existing Century Customers or for customers within the Century Territory during the term of the Agreement. [Doc. # 29, Ex. M].

Shortly after execution of the Agreement, the number of orders Interstate received from Century declined. Interstate then learned that Century was purchasing narrow fabric goods [5] from Northeast Knitting ("Northeast"), an Interstate competitor.[6] In response, Interstate wrote Mr. Fisher, requesting compliance with the Agreement and an accounting for any violations of the Agreement. [Doc. # 29, Ex. K]. Interstate received a response letter from Century's counsel stating that the purchases in question were for customers outside the Century Territory ("west coast operations") and therefore no violation of the Agreement had occurred. [Doc. # 29, Ex. L]. Based on the representations in this letter, Interstate did not pursue the issue further at this point.

After expiration of the Agreement, Interstate learned that some of Century's purchases from Northeast during the term of the Agreement had been for Existing Century Customers or customers within the Century Territory. And that, further, some of those purchases had occurred within weeks of the execution of the Agreement. The William Carter Company ("Carter's") is one such Existing Century Customer to which Century sold goods purchased from Northeast. Century had not provided Interstate with any competitive written quotes during the term of the Agreement. Disputes over whether Century violated the Agreement by making these purchases from Northeast constitute a major portion of the present litigation.

Interstate and Century continued a business relationship after expiration of the Agreement in March 2000. Between June 2000 and October 2000 Century placed an order for $26,153.38 worth of narrow fabric goods. The goods were delivered and then sold by Century to various customers. The invoices for this particular set of orders were

Century has stipulated that these invoices are authentic business records. [Doc. # 29, Ex. N].

Interstate contends that discovery revealed other suppliers from which Century purchased narrow fabric goods during the term of the Agreement; however, only the purchases from Northeast, those detailed in Doc. # 29, Ex. M, are subject to the motions for summary judgment.

never paid. Disputes over these unpaid invoices constitute the remaining portion of the present litigation.

On March 1, 2002 Interstate filed a Complaint against Century Inc. and the individual defendants in the Middle District of North Carolina. [Doc. # 1]. There is complete diversity of citizenship between Interstate and each defendant. Therefore, jurisdiction in the federal courts is proper pursuant to 28 U.S.C.A. § 1332(a)(1).

Interstate's Complaint seeks relief for conduct under the Agreement on breach of contract, unfair and deceptive trade practices (N.C.Gen.Stat. § 75–1.1), and fraudulent misrepresentation theories. In addition, the Complaint seeks relief for the unpaid invoices pursuant to breach of contract, conversion, and unjust enrichment theories. As relief, Interstate seeks compensatory and punitive damages, along with treble damages, costs, and attorneys' fees under Chapter 75.

The litigation at hand has a lengthy procedural history, marked by numerous motions and discovery disputes. An outline of the history relevant to the pending motions follows.

The parties' Joint Rule 26(f) Report was filed and approved on May 16, 2002. The report allowed Century to request leave to amend the pleadings until July 31, 2002. [Doc. # 13].

On January 31, 2003 Interstate moved for partial summary judgment. [Doc. # 28]. Specifically, Interstate requests that the Court find as a matter of law that (1) Century, Inc. and the individual defendants (Mr. Fisher, Mr. Wild, and Mr. Smith) breached the exclusive supplier portion of the 1998 Agreement; and (2) Century is liable to Interstate for the $26,153.38 in unpaid invoices on breach of contract and conversion theories.

On March 3, 2003 Century and the individual defendants moved for summary judgment. [Doc. # 34]. Specifically, Century requests that the Court find as a matter of law

that (1) the individual defendants had no duty under the exclusive supplier portion of the 1998 Agreement, and they are therefore not in breach of the Agreement; (2) there is no breach of the 1998 Agreement by Century; (3) the First Refusal Right in the Agreement does not require written price quotes unless the reason the goods are purchased elsewhere is solely because Interstate's prices are uncompetitive; (4) the goods subject to the First Refusal right are not specifically identified in the Agreement, and instead, are to be identified based upon the courses of dealing and performance displayed during the parties' ten-year commercial relationship; (5) there was no conversion of goods or tortious conduct committed; (6) there were no unfair trade practices committed; and (7) punitive damages may not be awarded.

On March 21, 2003 Century filed a Motion to Strike portions of Interstate's Brief in Support of its Motion for Partial Summary Judgment. [Doc. # 47]. Century alleges that a portion of Interstate's argument is spurious and is premised upon a disregard of the Federal Rules of Civil Procedure, and should therefore be stricken.

On May 30, 2003 Century filed a Motion for Current Counsel [7] to Withdraw and Allow Additional Counsel to be Substituted. The Court granted Century's Motion at a June 30, 2003 hearing, allowing the substitution of new counsel [8] with the condition that the old counsel remain in the case should sanctions be imposed. [Doc. # 72].

On July 15, 2003 Century filed a Motion to Amend its Answer by adding two additional affirmative defenses (its Forty–Fifth and Forty–Sixth), both based on statutes of limitation. [Doc. # 73].

## II.

■ Defendant Century's Motion to Amend its Answer [Doc. # 73] is denied. Generally, motions to amend a pleading are governed by Rule 15(a) of the Federal Rules

7. Century's counsel at the time of its Motion was David M. Wooldridge and Robert R. Baugh of Birmingham, Alabama, and Jack B. Bayliss, Jr. of Greensboro, North Carolina.

8. Mack Sperling of Greensboro, North Carolina was allowed as substitute counsel for Century.

of Civil Procedure. However, when a scheduling order has been entered, Rule 16(b), governing modification to a scheduling order, is also implicated. Several cases have noted that the two rules are at odds, as Rule 15(a) states that "... leave shall be freely given when justice so requires," but under Rule 16(b) "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge ...." *See, e.g., Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618, 631 (D.Md.2003). A recent opinion by this Court discusses the interplay between the two rules:

> While the Fourth Circuit has not specifically ruled on the interaction between Rule 16(b) and Rule 15(a), the Fourth Circuit has explained, that a defendant seeking to amend his answer to add a compulsory counterclaim after the time for amendments in the scheduling order has passed, must satisfy "both the Rule 16(b) analysis and the Rule 13(f) [the general rule governing counterclaims][9] analysis." *Essential Hous. Mgmt., Inc. v. Walker*, 1998 WL 559349, *4 (4th Cir. June 9, 1998) (unpublished opinion); *see also Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C.1987) ("A party who requests leave to amend after the date specified in the initial scheduling order must satisfy two prerequisites. The party must first demonstrate that there is 'good cause' why the court should not adhere to the dates specified in the scheduling order. If the party shows 'good cause' to the court's satisfaction, the party must then demonstrate that leave to amend is proper under Federal Rule of Civil Procedure 15.").·

*Studio Frames, Ltd. v. Village Ins. Agency, Inc.*, 2003 WL 1785802, at *1 (M.D.N.C. March 31, 2003).

Therefore, in the case at hand, it is necessary to consider first whether Century has shown "good cause" under Rule 16(b) to allow amendment of its answer, before addressing the more lenient standard posed by Rule 15(a).

"Good cause" under Rule 16(b) exists when evidence supporting the proposed amendment would not have been discovered "in the exercise of reasonable diligence" until after the amendment deadline had passed. *Studio Frames*, 2003 WL 1785802, at *2. "Good cause is not shown when the amendment could have been timely made." *Aventis Cropscience N.V. v. Pioneer Hi–Bred Int'l, Inc.*, 2002 WL 31833866, *2 (M.D.N.C. Dec.12, 2002) (citing *Wildauer v. Frederick County*, 993 F.2d 369, 372 (4th Cir.1993)).

Century argues that it did not know it had a potential defense based on a statute of limitation at the time the Complaint was filed (March 2002), but concedes that it learned facts during discovery that would have put it on notice of the potential defense "in July 2002." [Doc. # 74]. The deadline for amendments provided in the Rule 26(f) report was July 31, 2002. Therefore, evidence supporting Century's proposed amendments was available to Century *before* expiration of the amendment deadline. However, Century argues that the availability of the defense was overlooked for "good cause" because the individual defendants and Century's lead counsel at the time were all residents of Alabama where contract claims are subject to a six year statute of limitations.

Unfamiliarity with controlling law does not rise to the level of "good cause." The appropriate statutory period could easily have been ascertained in the exercise of reasonable diligence, either by research or simply conferring with local counsel. Century has not shown "good cause" under Rule 16(b), and it is consequently not necessary to consider whether Century can meet the more lenient Rule 15(a) standard. Century's Motion to Amend its Answer is DENIED.

### III.

Century's Motion to Strike that portion of Interstate's Brief seeking to prohibit Century from providing evidence different from the answers given at the 30(b)(6) deposition [Doc. # 47] is denied. Century has stated no authority allowing an argument to be stricken. Instead, the motion will be considered as a contention that Interstate's position on this

---

9. Rule 13(f) is applied under the same standards developed for application of Rule 15(a). *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 424 (4th Cir.1990).

issue be disregarded on its merits. The merits of the issue will be addressed along with the motions for summary judgment in Part IV.C.

## IV.

Interstate's Motion for Partial Summary Judgment [Doc. # 28] is granted in part and denied in part. Century's Motion for Summary Judgment [Doc. # 34] is granted in part and denied in part.

## A.

Additional facts relevant to the various parts of the summary judgment motions, considered in the light most favorable to the plaintiff, are as follows: Mr. Fisher knew that Century was purchasing goods from Northeast during the term of the Agreement. He reviewed the invoices for these sales and initialed them when paying Century's bills. In some cases, he expressly ordered the sales staff to purchase from other suppliers.

Mr. Kirk Sterley, the former Century employee now employed by Interstate, testified that nobody at Century informed him of the exclusive supplier agreement with Interstate while he was working for Century. He knew nothing of Interstate's right of first refusal, or even what such a right is, despite the fact that part of his job duties at the time was to place orders for goods to be sold within the Century Territory.

## B.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir.2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cox*, 249 F.3d at 299. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Cox*, 249 F.3d at 299. Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. The party opposing the motion may not rest upon its pleadings but must instead provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. *Id.* at 248, 106 S.Ct. 2505. This evidence must be properly authenticated pursuant to Rule 56(e). *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir.1993).

## C.

As a preliminary matter, it must be decided what evidence offered by Century can be considered in deciding the motions for summary judgment. Interstate argues, as part of its Motion for Partial Summary Judgment, that because Century's 30(b)(6) witness [10] was inappropriately prepared to fully answer questions, Century now should not be allowed to provide evidence on these matters that would show the existence of a material issue of fact.[11]

Even if precluding Century from offering certain evidence should be the appropriate sanction, the time and vehicle to have properly raised it would have been in a motion

---

10. Mr. Murray Fisher

11. Rule 30(b)(6) states:
 [a] party may in the party's notice and in a subpoena name as the deponent a public or private corporation ... and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify ... The persons so designated shall testify as to matters known or reasonably available to the organization.
 Fed.R.Civ.P. 30(b)(6).

under Rule 37. *See Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989). It is irrelevant that Interstate offered to give Century an opportunity to cure the problem through another 30(b)(6) deposition, at Century's cost. When Interstate wanted more information and Century failed to agree to a new deposition, Interstate had the obligation, if it desired answers to its questions, to file a motion to compel as well as to seek any other relief allowed through Rule 37. The *Marker* case is consistent with this requirement.

Interstate relies on *United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C.1996) to support its contention. *Taylor* involved a pre-deposition order discussing the responsibility of a corporate party to have a 30(b)(6) witness properly prepare for the deposition. It was not a sanctions case and the discussion of limitations of use of 30(b)(6) testimony at trial was necessarily dicta. Even so, the opinion observed that statements in a 30(b)(6) deposition are not the same as judicial admissions, that under certain circumstances the corporation may contradict the testimony at trial. *Id.* at 362 n. 6. Evidence and arguments offered at a Rule 30(b)(6) are not as binding as Interstate contends. Therefore, Century is not precluded from providing evidence different or beyond that which was provided at its 30(b)(6) deposition, and summary judgment will be decided with reference to all appropriate evidence.

### D.

The North Carolina Supreme Court has held that "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). Here, the Agreement states that it "shall be governed by and construed in accordance with domestic laws of the State of North Carolina ...." [Doc. # 29, Ex. J]. Therefore, when considering each of the party's arguments with respect to the Agreement, the law of North Carolina will be applied.

The disputes over the unpaid invoices are also governed by North Carolina law under the Erie Doctrine. When federal jurisdiction rests on diversity of citizenship, as it does here, the federal court applies the substantive law of the state in which the federal court sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Security Ins. Co. of Hartford v. Arcade Textiles, Inc.*, 40 Fed.Appx. 767, 2002 WL 1473417, *2 (4th Cir.2002). Therefore, the law of North Carolina will be applied to all disputes in this case.

### E.

Under North Carolina law, the elements of a breach of contract claim are (1) existence of a valid contract; and (2) breach of the terms of that contract. *Poor v. Hill*, 138 N.C.App. 19, 26, 530 S.E.2d 838, 843 (2000). To determine whether a breach occurred, the terms of the contract must be construed through application of contract construction principles. It is well-recognized that "when the language of a contract is clear and unambiguous, the court must interpret the contract as written ...." *Corbin v. Langdon*, 23 N.C.App. 21, 25, 208 S.E.2d 251, 254 (1974). Contract language "plain and unambiguous on its face" can be interpreted as a matter of law. *Taha v. Thompson*, 120 N.C.App. 697, 701, 463 S.E.2d 553, 556 (1995) (quoting *Cleland v. Children's Home*, 64 N.C.App. 153, 156, 306 S.E.2d 587, 589 (1983)). Therefore, a clear and unambiguous agreement poses no genuine issue of material fact and summary judgment is appropriate. *Corbin v. Langdon*, 23 N.C.App. 21, 27, 208 S.E.2d 251, 255 (1974).

However, any ambiguities in a contract should be construed by the jury as a matter of fact. *Taha*, 120 N.C.App. at 701, 463 S.E.2d at 556. A contract is ambiguous if the differing constructions asserted by the parties are both reasonably supported by the language of the contract. *Id.*

The Uniform Commercial Code, as adopted by North Carolina, must be considered along with the general principles of contract construction when construing a commercial contract. All commercial contracts must be interpreted with reference to the

parties' course of dealings and any applicable usage of trade. N.C. Gen.Stat. § 25–1–205(3) (2001). "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." § 25–1–203(1). "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question." *Id.*

In addition, the meaning of a commercial contract *for the sale of goods* that poses "repeated occasions for performance" must be determined in light of any relevant "course of performance [12] accepted or acquiesced in without objection" by the parties. § 25–2–208(1).

To the extent reasonable, any relevant course of dealings, usage of trade, and course of performance should be construed consistently with the express terms of an agreement. If such a construction is unreasonable, the express terms shall control. §§ 25–1–205(4), 25–2–208(2). However, even in a situation where an express term controls, course of performance may be used to show modification of that term if it is inconsistent with the parties' course of performance. § 25–2–208(3); *Mulberry–Fairplains Water Assn., Inc. v. Town of N. Wilkesboro,* 105 N.C.App. 258, 267, 412 S.E.2d 910, 916 (1992). Specifically, a provision may be modified by conduct during the course of performance "which naturally and justly leads the other party to believe the [provision has been] modified." *See Son–Shine Grading v. ADC Constr. Co.,* 68 N.C.App. 417, 422, 315 S.E.2d 346, 349 (1984).

**1.**

 It is undisputed that the 1998 Agreement was a valid contract between Century and Interstate. Interstate contends that Century purchased goods from Northeast in violation of the terms of the Agreement. Century contends that it performed its duties under the Agreement, and hence no breach occurred.

It is undisputed that Century purchased textile goods from suppliers other than Interstate during the contract period. However, the parties disagree as to the range of textile goods covered under the Agreement. "Product" is expressly defined, clearly and unambiguously, under the Agreement as "knitted or woven elastic or non-elastic products." As the Agreement is a commercial contract for the sale of goods, any relevant courses of dealing and performance must also be considered. §§ 25–1–205(3), 25–2–208(1).[13] Century contends that the parties' previous dealings under the 1990 Agreement and their subsequent dealings under the agreement in question show that the parties intended for the term "Product" to have a more narrow meaning than the one suggested by the contract language. However, this more narrow meaning is clearly different from the express definition, and it would be unreasonable to construe the two consistently. The express definition must control as a matter of law.

While the course of performance cannot be interpreted to change the express definition of Product, a reasonable jury could find that Century has provided sufficient evidence that the course of performance acted as a modification of the express definition. The ultimate definition of Product, therefore, is a genuine issue of material fact in the resolution of the parties' disputes under the Agreement. For purposes of the summary judgment motions regarding breach of the Agreement, consideration of the other disputes under the Agreement [14]

---

**12.** While "course of dealing" only refers to conduct of the parties preceding the contract at issue, "course of performance" encompasses conduct of the parties after or under the contract, and may have equivalent meaning in interpreting the contract. § 25–1–205 cmt 2; *Mulberry–Fairplains Water Assn., Inc. v. Town of North Wilkesboro,* 105 N.C.App. 258, 267 n. 1, 412 S.E.2d 910, 916 (1992).

**13.** The parties have not suggested that there is any relevant usage of trade to consider under § 25–1–205.

**14.** Interstate and Century also disagree as to (1) whether under the Agreement a price quote was required in every instance in which Century purchased Product from another supplier; and (2) whether such a quote had to be in writing.

is not necessary, as it cannot be known whether coverage under the Agreement was even triggered until it is determined whether Century purchased "Product" from other suppliers.

■ For the reasons stated above, Interstate's Motion for Summary Judgment as to its breach of contract claims under the Agreement is DENIED. Century's Motion for Summary Judgment as to Interstate's breach of contract claim under the Agreement is DENIED as against the corporate defendant, Century Inc.[15] However, the motion is granted as against the individual defendants, Mr. Fisher, Mr. Wild, and Mr. Smith, for the reasons provided below.

The contract provisions in the 1998 Agreement are clear and unambiguous in their reference to the different parties involved. The first paragraph defines the "Century Shareholders" as a group of six individuals (including the three individual defendants). The clear terms of the contract treat the Century Shareholders as a separate and distinct group from "Century." Specifically, Century and the Century Shareholders are, together, defined as the "Century Group." The portion of the Agreement addressing the exclusive supplier relationship refers only to Century, not to the Century Shareholders or the Century Group. [Doc. # 29, Ex. J, Tab 1 ¶ 3]. In contrast, other portions of the Agreement do refer to groupings that encompass the individuals.[16]

While it is clear that the individual defendants signed the Agreement in their individual capacities, Interstate has not pointed to any express contractual provision which imposes a duty upon the individuals to uphold the exclusive supplier agreement. That responsibility lies with the corporate entity, Century, according to the language of the Contract. Therefore, Interstate has not met the burden required to escape a motion for summary judgment, and the Court finds that the individual defendants had no duty to perform any obligations found in ¶ 3 of the Agreement. Century's Motion for Summary Judgment is GRANTED with respect to any breach of the exclusive supplier portion of the Agreement by Mr. Fisher, Mr. Wild, or Mr. Smith.

**2.**

Interstate's Motion for Summary Judgment as to its breach of contract claim against Century, Inc. for the unpaid invoices is granted.

■ It is undisputed that Century never paid Interstate the contract price of $26,153.38 for the goods listed on the unpaid invoices, and that these goods were ordered pursuant to a valid sales contract. Instead, Century claims its nonpayment is justified for a variety of reasons. Century states that it was angry over Interstate's hiring of its former employee, Mr. Kirk Sterley, and that Interstate owed Century for commissions and double billing of freight charges. Because of its concerns over these matters, Century decided to stop paying Interstate invoices until the issues were resolved. Century alleges that it explained its reasons for non-payment to Interstate by letter on November 27 [Doc. # 41, Ex. 38] and then did not hear back from Interstate regarding payment.

None of Century's proffered justifications excuse its breach of a material term of the sales contract. Even if the provided evidence is viewed in the light most favorable to Century, Interstate is entitled to judgment on the unpaid invoices as a matter of law. Therefore, this portion of Interstate's Motion for Summary Judgment is GRANTED, and

---

**15.** Century argues that this portion of its Motion for Summary Judgment should be granted if for no other reason, then because Interstate has not alleged damages from any breach of the exclusive supplier portion of the Agreement. However, Interstate points to evidence on the record, Interstate's interrogatory responses [Doc. # 61, Ex. S], which detail loss to Interstate resulting from Century's purchases from other suppliers. This evidence meets Interstate's burden in countering a motion for summary judgment, and Century's Motion for Summary Judgment, therefore, cannot be granted on these grounds.

**16.** For instance, ¶ 6.2 provides that "Century and the Century Shareholders" agree not to compete for sales to Interstate customers, and ¶ 7.1 provides that "each member of the Century Group" will not disclose Confidential Information. [Doc. # 29, Ex. J, Tab 1].

IT IS ORDERED that Century, Inc.[17] is liable to Interstate in the amount of $26,153.58 plus interest at the contract rate.[18]

### F.

Century's Motion for Summary Judgment as to Interstate's unfair and deceptive trade practice claims is granted in part and denied in part.

"[U]nfair or deceptive acts or practices in or affecting commerce are declared unlawful." N.C. Gen.Stat. § 75–1.1. A prevailing party under this statute must show: (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) that proximately caused actual injury to the plaintiff. *Gray v. N.C. Ins. Underwriting Assoc.*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). An "unfair" trade practice is one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers. *Id.* A "deceptive" trade practice is one that "has the tendency to deceive." *Id.* Generally, once a jury determines the relevant facts, the court determines whether a particular act is an unfair or deceptive trade act under § 75–1.1, as a matter of law. *Id.*

In general, a mere breach of contract, even if intentional, is not considered an unfair or deceptive trade practice under § 75–1.1. *Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc.*, 124 N.C.App. 383, 390, 477 S.E.2d 262, 266 (1996). To elevate a breach of contract action to the level of an unfair or deceptive trade practice, "substantial aggravating circumstances attendant to the breach must be shown." *Id.* Specifically, this Court has found that "[a]n intentional misrepresentation made for the purpose of deceiving another and which has the natural tendency to injure another ..." can act as a

sufficient aggravating circumstance. *Baldine v. Furniture Comfort Corp.*, 956 F.Supp. 580, 587 (M.D.N.C.1996). Further, a breach of contract can constitute an unfair or deceptive trade practice if the promisor enters into the contract with no intent to perform under the contract. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 903 (4th Cir.1996) (applying North Carolina law).

Here, Century requests that the Court find as a matter of law that no defendant[19] committed an unfair trade practice resulting from (a) the unpaid invoices, (b) the alleged breaches of the Agreement, or (c) the alleged use of the style number CR112P.

As an initial matter, Interstate has not met its burden under *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, to provide evidence sufficient to support a jury verdict in its favor with respect to claims involving the alleged use of the style number CR112P. In fact, Interstate has not addressed this portion of Century's Motion for Summary Judgment at all. Century's Motion for Summary Judgment as to the use of style number CR11P is GRANTED.

The specific grounds for the remaining unfair and deceptive trade practice claims (regarding the Agreement and the unpaid invoices) against Century, Inc. and Mr. Fisher are alleged by Interstate as follows: (1) Century and Mr. Fisher both executed the Agreement with the intention of breaching it; (2) they both intentionally deceived Interstate regarding only purchasing from Northeast for resale to west coast customers, so that Century could continue to reap the benefits of the Agreement; and (3) they both ordered goods from Interstate *after* deciding that Century would not pay the Interstate

---

17. Century, Inc. is the only defendant found liable for the unpaid invoices. In its Motion for Summary Judgment, Century requests that the Court find as a matter of law that the individual defendants have no liability for any breach of contract regarding the unpaid invoices. [Doc. # 46 at 1, ¶ 2]. However, this portion of Century's Motion for Summary Judgment need not be addressed, as Interstate's Complaint seeks relief solely from Century, Inc. for the unpaid invoices issue. [Doc. # 1 at 8, ¶ 2].

18. The invoices state an interest rate of one and one-half percent (1½ %) per month, starting thirty (30) days after each invoice date.

19. Century requests that summary judgment be granted as to Interstate's unfair trade practice claims against individual defendants Mr. Wild and Mr. Smith. However, Interstate's Complaint requests relief for unfair trade practices committed by Century, Inc. and Mr. Fisher *only*. [Doc. # 1 at 8 ¶ 4]. Therefore, any discussion of Mr. Wild and Mr. Smith, in this context, is irrelevant.

invoices. Each claim is addressed in turn below.

■ With respect to the first claim, factual issues preclude entry of summary judgment as to Century, Inc., but not as to Mr. Fisher. Interstate has provided evidence that Century's potentially breaching purchases occurred very soon after execution of the Agreement, and that Mr. Sterley knew nothing of the existence of the exclusive supplier arrangement. A jury, crediting this evidence, could reasonably find that Century, Inc. executed the Agreement with the intention of breaching it; therefore, Century's Motion for Summary Judgment on this claim is DENIED as to Century, Inc. However, as summary judgment is granted in favor of Century with respect to Mr. Fisher's liability for any breach of the exclusive supplier portion of the Agreement, see supra Part IV.E.1, summary judgment in favor of Century is also proper with respect to Mr. Fisher's liability for any unfair and deceptive trade practices stemming from breach of the Agreement. Therefore, Century's Motion for Summary Judgment on this claim is GRANTED as to Mr. Fisher.

■ With respect to the second claim, a jury could reasonably find that Century Inc. and/or Mr. Fisher intentionally deceived Interstate regarding Century purchases. Interstate has provided evidence showing that statements in the letter [Doc. # 29, Ex. L] Century sent Interstate,[20] assuring that purchases from Northeast were for west coast customers only, are false. Interstate contends that this letter constitutes an intentional misrepresentation on the part of Century. Interstate has provided enough circumstantial evidence to support a reasonable jury verdict that both defendants intentionally misrepresented the nature of Century's purchases under the Agreement; therefore, Century's Motion for Summary Judgment on this claim is DENIED as to both Century, Inc. and Mr. Fisher.

With respect to the third claim, Interstate does not meet the burden required to escape a motion for summary judgment in alleging that Century, Inc. and Mr. Fisher ordered goods from Interstate after deciding not to pay for the goods. Interstate makes these allegations in its brief [Doc. # 61] but points to no supporting evidence that can be used to counter summary judgment. Century's Motion for Summary Judgment as to this claim is GRANTED as to Century, Inc. and Mr. Fisher.

## G.

■ Interstate alleges that Century committed tortious acts accompanying its breach of the Agreement, and is therefore liable to Interstate for punitive damages. In general, "[p]unitive damages shall not be awarded against a person solely for a breach of contract." N.C. Gen.Stat. § 1D–15(d). However, if the elements of an independent tort can be shown along with the breach of contract, punitive damages may be available. Vanwyk Textile Sys. v. Zimmer Mach. Am., Inc., 994 F.Supp. 350, 361–62 (W.D.N.C.1997) (upholding award of punitive damages in a breach of contract case where plaintiff had also offered evidence of fraud and breach of fiduciary duty). Once an independent tort is made out, another requirement must be met: the tort must be accompanied by some element of aggravation, which includes fraud, malice, reckless indifference, oppression, insult, and willfulness. Taha v. Thompson, 120 N.C.App. 697, 705, 463 S.E.2d 553, 558 (1995).

Here, breach of contract claims are at the core of the parties' disputes. However, Interstate alleges additional facts which could support a claim of fraudulent misrepresentation. The elements of fraudulent misrepresentation are as follows: (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive; (4) which the injured person reasonably relies upon; (5) resulting in damage to the injured party. Pearce v. Am. Defender Life Ins. Co., 316 N.C. 461, 468, 343 S.E.2d 174, 178 (1986).

Interstate has alleged sufficient facts from which a reasonable jury could infer that Century committed fraudulent misrepresentation. Interstate's Complaint alleges that Cen-

---

**20.** This letter was in response to the letter Interstate initially sent to Mr. Fisher.

tury, Inc. and Mr. Fisher knowingly and willfully concealed any breaches of the Agreement so that Interstate, relying on the misrepresentations, would continue to offer Century product discounts. [Doc. # 1 ¶ 20]. Specifically, Interstate points to the letter [Doc. # 29, Ex. L] from Century to Interstate assuring it that any purchases from Northeast were for west coast customers only. Further, Mr. Fisher knew of the potentially breaching purchases, as evidenced by his testimony that he reviewed and initialed the invoices. A jury, crediting this evidence, could reasonably find that Century Inc. and Mr. Fisher committed fraudulent misrepresentation. In such a case, interstate would have made out the elements of an independent tort, and punitive damages would be available.[21] For these reasons, Century's Motion for Summary Judgment as to Interstate's fraudulent misrepresentation and punitive damages claims is DENIED.

## H.

 In its Motion for Summary Judgment, Century asks that the Court find as a matter of law that no conversion resulted from its non-payment of the invoices. Conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Lake Mary Ltd. P'ship v. Johnston,* 145 N.C.App. 525, 531–32, 551 S.E.2d 546, 552 (2001) (quoting *Peed v. Burleson's, Inc.,* 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)). A successful claim of conversion requires that the plaintiff maintain a right of possession of the property superior to that of the alleged converter from the time of the disputed action though the time of suit. *United States v. Currituck Grain, Inc.,* 6 F.3d 200, 205 (4th Cir.1993). "[A] sale or other loss of that possessory interest extinguishes that party's cause of action for conversion." *Id.*

Here, Interstate did not retain a superior possessory interest in the goods in question. A valid sales contract was executed, the goods were delivered and accepted. Any wrongful action did not occur until the time the invoices were payable, *after* Interstate had lost its possessory interest in the goods through the execution of the sale. Century's Motion for Summary Judgment as to Interstate's conversion claim is GRANTED. Correspondingly, Interstate's Motion for Summary Judgment as to this claim is DENIED.

## I.

Interstate claims that Century's refusal to pay the invoices constitutes tortious breach of contract. Under North Carolina law, tortious breach of contract is defined through reference to the standard of when punitive damages are available for breach of contract. *Taha,* 120 N.C.App. at 704, 463 S.E.2d at 558. Therefore, tortious breach of contract requires an independent tort accompanied by an element of aggravation. *See supra* Part IV.G. Here, Interstate's only alleged tortious conduct, conversion, is not supported by a reasonable interpretation of the facts. Century's Motion for Summary Judgment is granted with respect to conversion, *see supra* Part IV.H; therefore, Century's Motion for Summary Judgment is also GRANTED as to Interstate's claim of tortious breach of contract.

## V.

In summary, Century has cited no authority allowing an argument to be stricken, and its Motion to Strike is thereby DENIED. Century has failed to meet the "good cause" standard of Rule 16(b), and its Motion to Amend is thereby DENIED. Finally, for the reasons stated above, Interstate's Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART, and Century's Motion for Summary Judg-

---

**21.** Punitive damages would be available against Mr. Fisher if Interstate shows the elements of fraudulent misrepresentation, despite the fact that summary judgment is granted in favor of Mr. Fisher with respect to any breach of the exclusive supplier portion of the Agreement, *see supra* Part IV.E.1. Punitive damages could be based on the commission of the tort alone, without an accompanying breach of contract. *Mehovic v. Mehovic,* 514 S.E.2d 730, 733, 133 N.C.App. 131, 136 (1999) (holding that tort of fraud, by its very nature, encompasses required element of aggravation, and therefore can support an award of punitive damages).

ment is GRANTED IN PART AND DENIED IN PART.