SON-SHINE GRADING, INC. v. ADC CONSTRUCTION COMPANY, A GEORGIA
CORPORATION; RALEIGH PROPERTIES, LTD., A GEORGIA LIMITED PARTNER-
SHIP; AND ASBURY SNOW, JR., GENERAL PARTNER

No. 8310SC968

(Filed 15 May 1984)

**Contracts § 18— oral modification—contract requiring written modification—waiv-
er of requirement**

In an action in which plaintiff sought to recover from defendant general
contractor for clearing, excavating and grading the grounds of an apartment
complex, the trial court properly found that the original provisions of the con-
tract dealing with measurement of rock removed from the job site were
modified even though the contract stated that the provisions could not be
altered except by a written change, and the modification had occurred pur-
suant to a parol agreement. The provisions of a written contract may be
modified or waived by subsequent parol agreement, or by conduct which
naturally and justly leads the other party to believe the provisions of the con-
tract have been modified or waived, even though the instrument involved pro-
vides that only written modifications shall be binding. Further, the project
superintendent had authority to bind the corporate defendant by the oral
modification.

APPEAL by defendants from *Britt, Samuel E., Judge*. Judg-
ment entered 1 March 1983 in Superior Court, WAKE County.
Heard in the Court of Appeals 17 February 1984.

In this civil action plaintiff seeks to recover under a sub-
contract between it and the general contractor, defendant ADC
Construction Company, for clearing, excavating and grading the
grounds of an apartment complex constructed for Raleigh Proper-
ties, Ltd. Before the contract was entered into the parties knew
that the 11-acre construction site contained many visible boulders
and rock outcroppings, but since the amount of sub-surface rock
that would have to be removed was not known, it was agreed that
plaintiff would be paid extra for each cubic yard of rock removed
at varying rates according to the type of equipment that had to
be employed in accomplishing it. The contract also provided that

the amount of rock removed had to be measured by ADC's engineers, who were not usually on the site, and that the contract could not be altered except by a written change order executed by one of its officers.

In April, 1981 a significant amount of rock required removal, and, as a consequence, so plaintiff contends, its contract with ADC was modified to waive measurement of rock by ADC's engineers and permit the measurements to be made by plaintiff's and ADC's on-site personnel. The modification was allegedly made during a conference between certain of plaintiff's officials and defendant's Field Superintendent Jack Mabe on April 7, 1981, and the next day plaintiff wrote and delivered the following letter to him:

A D C Construction Company
ATTN: Mr. Jack Mabe
Deep Hollow Drive
Raleigh, North Carolina 27612

Subject: Raleigh Garden Apartments

Dear Mr. Mabe,

This writing is to confirm our job site meeting of yesterday concerning the removal of rock. Those present were Jack Mabe, Delmar Ivey, Tony Long, and Wayne Britt. Following are items concerning the agreements made with reference to the removal of additional rock if encountered:

1. It appears vast quantities of rock are subject to be encountered on subject site. Prior to our meeting and this writing, several small areas have already required the use of a dozer with ripper.

2. Due to the various times an engineering firm would be required to measure quantities with time being of upmost importance (job behind schedule), the measuring of rock will be accomplished by on site personnel.

3. Trench rock removal is to be measured by you and Delmar using the average end method with daily tickets being made; same as used when we were undercutting.

4. When rock is encountered in the general excavation that can be removed (ripped w/Cat D8K Dozer), Tony Long will mark a copy of his field engineering drawings (by BNK) with the elevations noted where rock depth started. You are to check with him daily and mark your drawings accordingly.

5. Any/all rock that is removed by any methods will be disposed on site.

6. Payments — Due to high cost in removing, trench rock will be invoiced and paid for monthly. Ripped rock will be computed upon completion of rough grading and invoiced at such time.

Jack, if the above statements/agreements are incorrect or if you are not in complete agreement, please advise.

Sincerely,

/S/ H. Wayne Britt

H. Wayne Britt

Neither ADC nor Mabe responded to the letter and during the rest of construction the rock removed was measured as therein stated. None of plaintiff's invoices thereafter submitted, all of which included amounts of rock removed without being measured by ADC's engineers, were disputed upon receipt, but several were paid, less retainage, though belatedly. In August, 1981, however, when ADC was quite behind in paying and the balance claimed by plaintiff amounted to more than $145,000, ADC refused to pay, citing that its engineers had not measured the rock removals itemized on several bills. Plaintiff then stopped work on the project, sued for monies allegedly due, and filed a notice of claim of lien against the property. Defendants denied plaintiff's claim and counterclaimed for the cost of work performed by another grading company, alleging that plaintiff, rather than it, had breached the contract.

The matter was heard by Judge Britt, sitting without a jury. At the close of all the evidence the judge directed verdict against defendants on the counterclaim, and after making extensive findings of fact and conclusions of law, entered judgment for plain-

tiff in the sum of $136,219.27. Among other things, the judgment was based on findings of fact and conclusions that the written contract was modified by ADC's field superintendent, as plaintiff contended, and that ADC breached the contract and plaintiff did not.

*Smith, Debnam, Hibbert & Pahl, by Carl W. Hibbert, for plaintiff appellee.*

*Merriman, Nicholls, Crampton, Dombalis & Aldridge, by W. Sidney Aldridge, and Fishman, Freeman & Gordon, Atlanta, Georgia, by Richard Allen Gordon, for defendant appellants.*

PHILLIPS, Judge.

The dominant question for our determination is whether ADC's Field Supervisor, Jack Mabe, had authority to modify the contract with plaintiff by dispensing with the requirement that ADC's engineers measure the rock that plaintiff removed from the construction site. The several other questions posed by the appellants in their brief are subordinate to and controlled by this one. If Mabe had authority to, and did, modify the contract, whether ADC ratified the change, as the court also found and defendants dispute, is not crucial to plaintiff's case; if the contract was modified to permit removed rock to be measured in the ways specified in plaintiff's letter summarizing the modifications agreed to, defendants' contention that measurements made in accord therewith were too inexact and unreliable to support the damages awarded, merits little or no discussion; and, finally, if the contract was modified and ADC's refusal to pay thereunder was a breach, as the court also found, it necessarily follows that ADC's counterclaim, based on the theory that it had performed the contract and plaintiff had breached it, had no basis and the court could not have erred in dismissing it, as defendants contend. On the other hand, if the contract was not modified by Mabe, plaintiff's judgment must be set aside and ADC's counterclaim reinstated. The nature of the deviation from the written contract is such that it almost answers the question for us without further resort to the evidence. The modification imposed no new obligation of any kind on ADC and relieved plaintiff of no obligation to it; instead it relieved ADC of the necessity of having its engineers on the site every time rock had to be measured, named the ex-

perienced construction employees of plaintiff and ADC that would do the measuring instead of the engineers, and specified the methods that they would use while so doing.

Pertinent to the dominant issue presented, the trial court made the following findings of fact:

11. That ADC's Jack Mabe as Field Superintendent was on the job site constantly (until June, 1981, and succeeded in that capacity by Frank Costin), supervising construction and dealing with subcontractors such as Son-Shine.

. . . .

14. That on the Raleigh Garden Project, ADC's Jack Mabe had a wide range of responsibility and authority which was manifested by his conduct, and increased to some extent due to his representing an out-of-state general contractor (ADC).

15. That on this particular project, Jack Mabe, in his dealings with Son-Shine, exhibited his apparent authority in representing ADC by authorizing and requesting Son-Shine to do certain tasks outside the scope of the written agreement, including but not limited to:

      a. drain and undercut (silt removal) a large pond on the site;

      b. relocate a sewer line and manhole;

      c. sell diesel fuel and gasoline to ADC;

      d. rent equipment to ADC for its use.

. . . .

19. That Son-Shine was paid by ADC for most of the above items requested (and more specifically for the pond and sewer line work) in the earlier stages of the project.

. . . .

21. That Son-Shine first encountered subsurface rock on the job site in April, 1981, and thereafter a meeting was held on April 7, 1981, between Son-Shine's Wayne Britt and ADC's Jack Mabe concerning procedures to be followed in measur-

ing rock quantities. That the letter written by Wayne Britt on April 8, 1981 (see plaintiff's Exhibit 18) was a memorandum of the oral agreement and was delivered to Jack Mabe on or about April 8, 1981.

22. That certain procedures for measuring quantities of rock were agreed upon by ADC and Son-Shine at the April 7, 1981 meeting, and that thereafter these procedures were substantially complied with by Son-Shine.

It is well established under our law that: The provisions of a written contract may be modified or waived by a subsequent parol agreement, or by conduct which naturally and justly leads the other party to believe the provisions of the contract have been modified or waived, even though the instrument involved provides that only written modifications shall be binding. *W. E. Garrison Grading Co. v. Piracci Construction Co., Inc.*, 27 N.C. App. 725, 221 S.E. 2d 512 (1975), *rev. denied*, 289 N.C. 296, 222 S.E. 2d 695 (1976). The foregoing and other findings of fact, abundantly supported by evidence, are clearly sufficient, in our opinion, to support the trial judge's conclusion that the contract terms governing the measurement of the amount of rock removed was modified by a mutual oral agreement. The defendants' contention that written authority from a company officer had to be shown is rejected. ADC chose to conduct this large, ongoing project through Mabe, who could not possibly carry out the project efficiently without authority to make such minor changes in the project and the methods of accomplishing it as the exigencies of the situation required. That that was the understanding of ADC, as well as the plaintiff, is clearly inferable from the various events recited, and by the additional fact, as the evidence plainly shows, that the job was already behind and more delays were inevitable unless ADC kept its engineers at plaintiff's beck and call for an extended period at considerable expense or measured the rock with on-site personnel. That Mabe had authority from ADC to purchase work and materials not even referred to in the written contract at a cost of several thousand dollars is certainly some evidence that he likewise had authority to expedite his employer's business by having rock that was covered by the written contract measured by other construction personnel that were already there.

Furthermore, even if Mabe's modification of the written contract had not been authorized by ADC, that deficiency was rendered irrelevant by ADC's own actions thereafter. ADC did not exist just in Atlanta, where its officers and home offices were, as defendants in effect contend; it was also at the site of the project in great force, constructing much of it and supervising the rest. Like any other legal entity, ADC was bound to know the status of its own business and the movement and activities of its own members, the employees of a corporation being, in effect, what arms, legs, ears and eyes are to an individual. Thus, ADC knew from observation, bills received, and the whereabouts and work of its own employees that great quantities of rock were being excavated on this project without its engineers being sent to the scene or doing the measuring; and it also knew that the measuring was being done by site personnel without the project being delayed by the absence of its own engineers. Knowing these things and that it was its obligation, not plaintiff's, to have its engineers there when needed, ADC nevertheless permitted its engineers to work elsewhere, continued to accept plaintiff's excavation work without the measurement of its engineers, and even paid on various of plaintiff's invoices. In doing so, ADC ratified the modification made and the appellants are estopped to deny Mabe's authority to make it. *Boddie v. Bond*, 154 N.C. 359, 70 S.E. 824 (1911). To hold otherwise would be to penalize plaintiff for ADC's own derelictions, which the law does not permit.

Though a discussion of the other questions presented by defendants is not required for the reasons earlier stated, we nevertheless note that their claim that the amounts awarded plaintiff for removing rock is supported only by measurements made by methods that are unreliable and uncertain is without merit. Apart from the fact, which is answer enough, that the methods used to measure the rock involved were those that ADC itself agreed to and regularly used, measurement being the joint task of Mabe and certain of plaintiff's employees under the modification, the record contains plenary evidence that those methods are inherently reliable, reasonably accurate, and generally approved by construction personnel in this area.

Affirmed.

Judges WELLS and BRASWELL concur.