An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-169

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

GREER L. GEIGER, M.D.,
    Plaintiff,

v.                                    Guilford County
                                      No. 12 CVS 5477

CENTRAL CAROLINA SURGICAL EYE
ASSOCIATES, P.A., J. MARK
McDANIEL, JR. and C. RICHARD EPES,
    Defendants.


Appeal by defendants from order entered 11 February 2013 by Judge A. Moses Massey in Guilford County Superior Court. Heard in the Court of Appeals 13 August 2014.


> *Tuggle Duggins P.A., by Denis E. Jacobson, Brandy L. Mills, and Richard W. Andrews, for plaintiff-appellee.*
>
> *Rossabi Black Slaughter, P.A., by Gavin J. Reardon and Amiel J. Rossabi, for defendants-appellants Central Carolina Surgical Eye Associates, P.A. and C. Richard Epes.*
>
> *Culbertson & Associates, by K.E. Krispen Culbertson, for defendant-appellant James Mark McDaniel, Jr.*


HUNTER, Robert C., Judge.


Defendants appeal from the order granting plaintiff's motion for a directed verdict on defendants' affirmative defense which alleged that the terms of plaintiff's employment were

modified by oral agreement. On appeal, defendants argue that the trial court erred in granting plaintiff's motion because there was sufficient evidence to support a finding that the parties had agreed to an oral modification of the written employment agreement. Plaintiff contends that defendants' notice of appeal was deficient and requests this Court dismiss the appeal. However, in the alternative, plaintiff argues that defendants could not orally modify the employment contract pursuant to the North Carolina Wage and Hour Act and that, even if defendants did provide written notice of the modification in August, she did not assent to the terms of the modification nor was it supported by consideration.

After careful review, we conclude that defendants' notice of appeal was sufficient to confer jurisdiction to this Court. Moreover, we find that the trial court did not err in granting the directed verdict because: (1) plaintiff's employment agreement could not be orally modified under North Carolina's Wage and Hour Act ("NCWHA"); and (2) even assuming that the modified employment agreement which was provided to plaintiff in August constitutes sufficient written notice of a change in plaintiff's wages under NCWHA, defendants failed to produce any evidence that plaintiff had assented to the modified contract, a

required showing for the affirmative defense of modification. Therefore, the trial court did not err in granting a directed verdict for plaintiff on defendants' sixth affirmative defense of contract modification.

## Background

From 2005 to 2011, plaintiff Greer L. Geiger, M.D., worked at Kaiser Permanente ("Kaiser") in California as an ophthalmologist, specializing in retina surgery and care. In 2010, Kaiser started reviewing cases plaintiff had handled relating to patients who had returned to the operating room within six months after surgery. As a result of this review, Kaiser presented plaintiff with ten to twelve cases in which plaintiff had made mistakes, half of which had nothing to do with surgery and involved administrative issues. Plaintiff contended that the reasons for these return visits were minor in nature and had nothing to do with patient care. However, after Kaiser initiated the review, plaintiff felt that Kaiser would no longer be a comfortable work environment and began looking for another job.

In December 2010, plaintiff was contacted by a recruiter about a potential job opportunity as a retina specialist with defendant Central Carolina Surgical Eye Associates ("Central

Carolina") in Greensboro, North Carolina. After expressing interest in the job, plaintiff's curriculum vitae was forwarded to Central Carolina.

In January 2011, plaintiff interviewed for the position with Central Carolina. On 4 January 2011, plaintiff met with shareholders, officers, and employees of Central Carolina, including defendant J. Mark McDaniel Jr. ("McDaniel"), the CEO of Central Carolina, and defendant Dr. C. Richard Epes ("Epes"), president, majority owner of, and a surgeon at Central Carolina (collectively, Central Carolina, McDaniel, and Epes are referred to as "defendants"). On 11 January 2011, Central Carolina offered the job to plaintiff which would entitle plaintiff to a base salary of $350,000 her first year.

After receiving the job offer from Central Carolina, plaintiff resigned from Kaiser. In conjunction with her resignation, plaintiff entered into a confidential settlement agreement with Kaiser dated 1 February 2011. As part of the settlement agreement, Kaiser paid plaintiff $227,000 and forgave a $120,000 home loan in exchange for a full release of any claims she had or might have against Kaiser. Thereafter, plaintiff voluntarily surrendered her privileges to practice at Kaiser's facilities.

Because the settlement occurred prior to the conclusion of Kaiser's investigation, Kaiser felt it necessary to file a report with the National Practitioner Data Bank (the "Data Bank"). The report was processed on 17 March 2011 and did not indicate any wrongdoing on the part of plaintiff. The report stated that plaintiff resigned while under investigation to avoid the expense of further engaging in the process and that plaintiff disputed that her practice presented any cause for medical discipline.

On 17 February 2011, Central Carolina and plaintiff entered into a written, three-year employment agreement (the "Employment Agreement"). Under the Employment Agreement, plaintiff was to begin work no later than 2 May 2011. Plaintiff was guaranteed a first-year salary of $350,000, payable twice monthly in payments of $14,583.34. In addition to her base salary, plaintiff was to receive 34% of her net collections in excess of $1,029,411.77. Furthermore, the terms of the Employment Agreement provided that: (1) plaintiff was required to work full time for Central Carolina; and (2) Central Carolina had exclusive authority to "direct and control the assignment of patients and scheduled operation" for plaintiff. At plaintiff's request, a handwritten modification was included allowing for an earlier start date

pending completion of licensure and insurance enrollment. Both parties understood that this also meant that the start date could be delayed if plaintiff's licensure or insurance enrollment were not completed before 2 May 2011.

In April 2011, plaintiff relocated from California to Greensboro. Plaintiff applied for and obtained her North Carolina medical license, completed applications to become credentialed, and worked to receive privileges to practice at the hospital. As a result, plaintiff was ultimately credentialed with all insurance companies from which Central Carolina sought approval and granted privileges to practice at Moses H. Cone Memorial Hospital.

One insurer to whom plaintiff submitted an application was Blue Cross Blue Shield of North Carolina ("BCBS"). On 18 April 2011, plaintiff signed the attestation statement for the BCBS application indicating that, to her knowledge, she had never been reported to the Data Bank. Plaintiff had checked the Data Bank as recently as February or early March and no report was shown. Kaiser did not submit the report to the Data Bank until 17 March 2011.

On 26 May 2011, Central Carolina was informed by BCBS that it could not approve plaintiff's application for enrollment

because it contained false or incorrect information. BCBS requested information about the report submitted by Kaiser. Plaintiff provided BCBS with the requested information, and, on 29 July 2011, BCBS granted plaintiff's application to be a BCBS provider.

On or around 28 May 2011, defendants discussed the BCBS matter with plaintiff. According to McDaniel's testimony, plaintiff was verbally advised that, as a result of the discovery of the adverse report, the written Employment Agreement was "void" and that she would not be paid under the terms of the Employment Agreement. Instead, moving forward, she would be compensated based on production only with no base salary compensation. According to McDaniel, plaintiff was "teary-eyed, emotional, [and] seemed contrite," and did not say much of anything but later "slammed her hand on the table and walked out." Although the parties did not execute a new written agreement memorializing the changed agreement regarding plaintiff's pay, defendants allege that the parties thereafter acted in accordance with the changed agreement. Most notably, defendants argue that plaintiff was never paid the base salary and was, instead, only paid on commission. However, plaintiff

disputes that any modification to her Employment Agreement was ever discussed at the 28 May 2011 meeting.

In July 2011, plaintiff began seeing Central Carolina patients. However, Central Carolina did not pay plaintiff for any of the work she performed until 30 September 2011. Plaintiff repeatedly inquired about Central Carolina's failure to pay her promised wages under the Employment Agreement and demanded that she be paid. On 17 August 2011, plaintiff emailed defendants, asking to be paid that Friday and noting that she expected her paycheck to "reflect the agreed upon base salary."

In August 2011, defendants presented plaintiff with a written copy of a modified contract reflecting the changes to her compensation which were allegedly discussed at the 28 May 2011 meeting (the "modified August contract"). The modified August contract changed, among other things, plaintiff's guaranteed salary of $350,000 to a percentage of her production. The modified August contract also removed the requirement that plaintiff work full time for Central Carolina and gave plaintiff control of her own scheduling. The copy of the modified August contract included in the record on appeal is not dated nor signed.

On 18 September 2011, plaintiff sent a letter to McDaniel in which she again inquired about her unpaid wages and stated that she was considering reporting the situation to the North Carolina Wage and Hour Bureau. Plaintiff also noted that defendants had promised but failed to pay her on multiple dates "as far back as Friday the last week of July."

Plaintiff did not receive her first paycheck until 30 September 2011. The paycheck was for less than the amount promised under the terms of the Employment Agreement. Within two weeks, plaintiff's counsel sent defendants a letter demanding plaintiff's back wages she was due under the Employment Agreement.

In January 2012, with defendants' knowledge and acquiescence, plaintiff began working part-time for other practices in order to meet her expenses and other financial obligations. Defendants never complained to plaintiff about her outside employment. On 6 June 2012, after defendants repeatedly failed to pay plaintiff under the terms of the Employment Agreement, plaintiff ceased performing all services for defendants.

On 13 April 2012, plaintiff commenced an action against defendants alleging: (1) breach of contract against Central

Carolina, and (2) a violation of the North Carolina Wage and Hour Act against all defendants. On 19 June 2012, defendants filed an answer and counterclaim, alleging breach of contract. Approximately six months later, on 12 December 2012, defendants filed additional affirmative defenses, including the defense that the Employment Agreement had been modified. Following a hearing on 4 February 2013, defendants' breach of contract counterclaim was dismissed by Judge David L. Hall at summary judgment. The matter came on for trial during the 11 February 2013 Civil Session of Guilford County Superior Court.

At the close of evidence, plaintiff moved for and was granted a directed verdict on defendants' sixth affirmative defense, which alleged that the terms of plaintiff's employment were modified by an oral agreement of the parties. The jury later found for plaintiff, finding that: (1) the Employment Agreement between plaintiff and Central Carolina was not induced by fraud, (2) plaintiff was entitled to recover $288,734.85 from defendants for breach of contract and unpaid back wages, and (3) McDaniel and Epes were employers under the North Carolina Wage and Hour Act. On 16 April 2013, Judge Massey entered findings of fact, an order, and a judgment reflecting the jury's verdict. In his findings and order, Judge Massey found that defendants'

failure to pay plaintiff was not in good faith and that defendants were liable to plaintiff, jointly and severally, for the sum of $767,186.10 (representing prejudgment interest, attorney's fees, costs, and twice the amount of plaintiff's unpaid wages). On 22 April 2013, defendants filed a Motion for Judgment Notwithstanding the Verdict or in the Alternative, Motion for New Trial. On 24 July 2013, the trial court denied defendants' post-trial motions.

On 7 August 2013, defendants timely appealed.

**Notice of Appeal**

Initially, we must determine whether defendants' notice of appeal was proper. Pursuant to Rule 3 of the North Carolina Rules of Appellate Procedure, plaintiff argues that defendants' notice of appeal was deficient by failing to designate the trial court's order granting a directed verdict in favor of plaintiff on defendant's affirmative defense of modification or the order from which the appeal was being taken. Accordingly, plaintiff contends that the Court should dismiss the appeal for lack of jurisdiction.

Rule 3(d) of the North Carolina Rules of Appellate Procedure provides that an appellant's notice of appeal "shall designate the judgment or order from which appeal is taken[.]"

"An appellant's failure to designate a particular judgment or order in the notice of appeal generally divests this Court of jurisdiction to consider that order." *Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 347, 666 S.E.2d 127, 133 (2008); *see also Rite Color Chemical Co. v. Velvet Textile Co.*, 105 N.C. App. 14, 17, 411 S.E.2d 645, 647 (1992). However, if the appellant made "a mistake in designating the judgment", *Smith v. Indep. Life Ins. Co.*, 43 N.C. App. 269, 274, 258 S.E.2d 864, 867 (1979), or if an appellant's intent to appeal from the proper judgment can be inferred from the notice and the appellee was not misled by the mistake, the Court may liberally construe a notice of appeal to obtain jurisdiction , *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156-57, 392 S.E.2d 422, 424 (1990).

Here, although the order granting a directed verdict for plaintiff on defendants' affirmative defense of modification is not specifically mentioned in the notice, defendants' notice of appeal states that they are appealing, among other things:

> (4) the Ruling of the Honorable A. Moses Massey rendered during the trial of the captioned matter, to exclude jury instructions and questions or issues for the jury regarding the modification of the Employment Contract between Plaintiff and CCSEA, and regarding waiver by the Plaintiff of any alleged breach of the Employment Contract by Defendants.

Although their notice of appeal does not specifically designate the order from which they are appealing, construing paragraph 4 of the notice liberally, it manifests an intent to appeal the order granting plaintiff's motion for a directed verdict since that order had the effect of "exclude[ing] . . . questions or issues for the jury regarding the modification of the Employment Contract." Therefore, pursuant to *Ramm*, the notice was sufficient to confer jurisdiction upon the Court, and we address the merits of the defendants' appeal below.

## Standard of Review

"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991). "In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor." T*urner v. Duke Univ.*, 325 N.C. 152, 158,

381 S.E.2d 706, 710 (1989). In the case of an affirmative defense, directed verdict is properly granted where the defendant fails to present more than a scintilla of evidence in support of each element of his defense. *See Booker v. Everhart*, 33, N.C. App. 1, 15, 234 S.E.2d 46, 56, (1977), *rev'd on other grounds*, 294 N.C. 146, 240, S.E.2d 360 (1978).

## Arguments

Defendants sole argument on appeal is that the trial court erred in granting plaintiff's motion for a directed verdict on their defense of modification because there was sufficient evidence showing that the parties had orally agreed to modify the compensation terms of the Employment Agreement to submit the issue to the jury.[1] Specifically, defendants contend that they offered evidence for both elements necessary for the defense of contract modification: (1) plaintiff's assent to the modified terms can be established by her conduct; and (2) plaintiff received new consideration for the modification. In contrast, plaintiff argues that, pursuant to the NCWHA, defendants could

---

[1] Although McDaniel also argues on appeal that the trial court erred in refusing to instruct the jury on the issue of modification, he concedes that this issue is moot should the Court conclude that the directed verdict for plaintiff was properly granted.

not orally modify the compensation terms of her Employment Agreement.

We agree with plaintiff and conclude that defendants could not, as a matter of law, orally modify the wage provisions of the Employment Agreement under NCWHA. Furthermore, even if we assume that the modified August contract constituted proper notice under the NCWHA, defendants' affirmative defense still fails because there was no evidence that plaintiff assented to the terms of the modification, a required showing to defeat plaintiff's motion for a directed verdict.

## I. NCWHA and Oral Modifications to Employment Contracts

NCWHA, section 95-25.13(3) (2013), provides that employers must "[n]otify its employees, in writing or through a posted notice maintained in a place accessible to its employees, at least 24 hours prior to any changes in promised wages. Wages may be retroactively increased without the prior notice required by this subsection." This Court has interpreted the Act to mean that "[a]n employer may provide for loss or forfeiture of wages and benefits, or change the wages and benefits offered at any time, but prior to such change, the employer must notify the employee of the change in writing or through a posted notice, and the change can only have prospective application, except in

the case of increases in wages and benefits." *Narron v. Hardee's Food Sys., Inc.*, 75 N.C. App. 579, 583, 331 S.E.2d 205, 207-08 (1985), *overruled on other grounds by J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 362 S.E.2d 812 (1987).

Here, it is undisputed that, on 17 February 2011, the parties entered into a written Employment Agreement which guaranteed plaintiff a first-year salary of $350,000, payable twice monthly. The discussion defendants had with plaintiff where they claim they orally modified the wage provisions of the Employment Agreement occurred on or about 28 May 2011. However, defendants never presented plaintiff with any written document showing the modification until late August 2011 when they provided her the modified August contract, which substantially reduced plaintiff's compensation to 34% of her net collections without including any provisions for a base salary. Thus, as a matter of law, defendants' claim that they orally modified the employment agreement in May fails because, under section 95-25.13(3), an employee's wages may not be modified orally.

Despite the fact that the parties could not orally modify the Employment Agreement, it is undisputed that defendants did provide plaintiff a copy of her purported new contract in

August. Assuming, without deciding, that this constituted sufficient notice under NCWHA, defendants must show that they provided more than a scintilla of evidence for each required element of contract modification to survive plaintiff's motion for a directed verdict.

## II. Contract Modification

Under North Carolina law, to be effective, a modification must "contain all the essential elements of a contract." *Yamaha Int'l Corp. v. Parks*, 72 N.C. App. 625, 628, 325 S.E.2d 55, 58 (1985). "The critical elements are mutual assent to the modification, and consideration or a substitute supporting it." *Altman v. Munns*, 82 N.C. App. 102, 105, 345 S.E.2d 419, 422 (1986). A contract "may be modified or waived by a subsequent parol agreement, or by conduct which naturally and justly leads the other party to believe the provisions of the contract are modified or waived . . . . This principle has been sustained even where the instrument provides for any modification of the contract to be in writing." *Childress v. Trading Post*, 247 N.C. 150, 154, 100 S.E.2d 391, 394 (1957) (citations omitted).

With regard to the first element of mutual assent, a modification must reflect "an agreement between the parties that the terms of the contract should be altered." *G. Adrian Stanley*

*& Assocs. v. Risk & Ins. Brokerage Corp.*, 123 N.C. App. 532, 535, 473 S.E.2d 345, 348 (1996); *see also Electro Lift, Inc. v. Miller Equip. Co.*, 4 N.C. App 203, 207, 166 S.E.2d 454, 457 (1969) ("Mutual consent is as much a requisite in effecting a contractual modification as it is in the initial creation of the contract."). Mutual assent may be shown by an affirmative statement agreeing to modification or by "conduct which naturally and justly leads the other party to believe the provisions of the contract have been modified or waived." *Son-Shine Grading, Inc. v. ADC Constr. Co.*, 68 N.C. App.417, 422, 315 S.E.2d 346, 349 (1984).

Defendants present no evidence that plaintiff made any "affirmative statement," *id.*, agreeing to the new terms of compensation. Instead, they argue that plaintiff agreed to the modification through her conduct. However, we conclude that plaintiff's conduct "naturally" and "justly", *id.*, supports an opposite conclusion. With regard to plaintiff's reaction at the May meeting where plaintiff was allegedly informed about her new compensation, she responded by slapping her hand on the table and becoming emotional. This is certainly not indicative of acquiescence or evidence that plaintiff agreed to be paid on a production-only basis. Furthermore, there is overwhelming

evidence in the record that plaintiff consistently objected to being paid much less than what was provided in the Employment Agreement. Specifically, plaintiff began requesting the base salary she was owed as early as July 2011 and thereafter continued to inquire about defendants' failure to pay her "[r]egular bimonthly pay" and "base salary after taxes" which she was entitled to under the terms of the Employment Agreement. Both plaintiff and plaintiff's counsel sent letters to defendants disputing plaintiff's wages and expressing their inclination to report the situation to the North Carolina Wage and Hour Bureau. Plaintiff continued to dispute her wages until she resigned in June 2012. Most notably, plaintiff refused to sign the modified August contract reflecting defendants' alleged oral modifications.

With regard to defendants' contention that plaintiff's part-time work in January 2012 constituted evidence of assent since plaintiff was prohibited under the Employment Agreement from working for other employers but allowed to do so under the modified August contract, their argument is without merit. Plaintiff only began working part-time after months of requesting her base salary and only out of desperation. After eight months of receiving wages less than promised under the

written Employment Agreement and numerous letters to defendants disputing her wages, plaintiff began working part-time to meet her expenses and other financial obligations. Therefore, plaintiff's part-time work is not evidence of assent to the modified terms of the Employment Agreement.

Thus, in sum, defendants failed to produce any evidence showing that plaintiff mutually assented or in any way agreed to the modified terms of the Employment Agreement. In contrast, the evidence clearly shows conduct by plaintiff indicating that she was acting as though the Employment Agreement was still in place. Because there was no evidence of mutual assent, a required element for contract modification, it is not necessary to discuss whether the modification was supported by new consideration.

## Conclusion

Based on the foregoing reasons, we conclude that the trial court did not err in granting a directed verdict for plaintiff on defendants' affirmative defense of contract modification.

NO ERROR.

Judge DILLON concurs in result.

Judge DAVIS concurs.

Report per Rule 30(e).